VENABLE LLP
SARAH S. BROOKS
SSBrooks@venable.com
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone:  310.229.9900
Facsimile:  310.229.9901

Attorney for Plaintiff
Quince & Co LLC

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Quince & Co LLC, | Case No.  3:23-cv-6016 |
| Plaintiff, | **COMPLAINT** |
| v. | |
| | **DEMAND FOR JURY TRIAL** |
| Last Brand, Inc., | |
| Defendant. | |

Plaintiff Quince & Co LLC hereby complains and alleges as follows:

## PARTIES

1.     Plaintiff Quince & Co LLC ("Plaintiff"), is a California limited liability company with its principal place of business at 470 Pacific Avenue, San Francisco, CA 94133.

2.     Plaintiff owns and operates Quince, a world-renowned restaurant in San Francisco that has three Michelin Stars.

3.     Defendant Last Brand, Inc. ("Defendant") is a Delaware corporation with its principal place of business at 47 Gilbert Street, San Francisco, CA 94103.

## JURISDICTION AND VENUE

4.     This action arises from infringement of a federally registered trademark in violation of Section 32(1) of the Lanham Act (15 U.S.C. § 1114(1)); from unfair

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

competition and false designation of origin or sponsorship in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); and from trademark infringement at common law.

5.     The Court has subject matter jurisdiction over Plaintiff's Lanham Act claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, and has supplemental jurisdiction over the state and common law claims pursuant to 28 U.S.C. § 1367, as those claims are part of the same case or controversy as the federal claims alleged herein.

6.     The Court has personal jurisdiction over Defendant because Defendant resides in California and has continuous, systematic, and substantial contacts within California. Defendant directed tortious acts at Plaintiff in this District, and committed tortious acts that it knew or should have known would cause injury to Plaintiff in this District.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District, and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTS

### A.     Plaintiff's Marks

8.     Since 2003, Plaintiff has owned and operated Quince, one of the most well-known and highly-regarded restaurants in the world. Quince was awarded one Michelin Star in 2007, a second Star in 2014, and a third Star, the highest rating given, in 2017. Quince is one of only twelve restaurants nationwide to achieve that honor. Quince has also been awarded a Michelin Green Star for its sustainable environmental practices, and is one of only five restaurants in the United States to have earned a Green Star in addition to the three Stars awarded for culinary excellence. In 2011, Quince's head chef received the James Beard Award for Best Chef, and Quince has been nominated for numerous additional James Beard Awards, including for Outstanding Restaurant and Outstanding Service. In 2015, the San Francisco Chronicle awarded Quince its highest rating of four stars, and has listed Quince among its annual Top 100 Restaurants. Forbes Travel Guide has also recognized Quince has one of the eight best restaurants in San Francisco. The

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

COMPLAINT

Quince restaurant has over 1,500 reviews on yelp.com and over 500 reviews on tripadvisor.com, and is ranked on tripadvisor.com as one of the top three fine dining restaurants in San Francisco.

9.    In addition to its restaurant, Plaintiff offers home dining options such as fresh produce, dry goods, and olive oil, and holds events such as apple picking, cider pressing, beekeeping, and cheesemaking workshops around its farm. Plaintiff also offers design and consulting services under its brand Quince & Co. Plaintiff markets its restaurant and services through the websites quincerestaurant.com, quinceandcosf.com, instagram.com/quince_sf/, and twitter.com/quincesf.

10.    Plaintiff owns a federal trademark registration for QUINCE (U.S. Trademark Registration No. 5,730,261) for providing dining and culinary entertainment events in the nature of food tastings; culinary entertainment activities, namely, providing food tastings and experiential events; catering services; event food preparation services; custom meal creation services, namely, food preparation services, consulting in the field of menu planning for others and advice concerning cooking recipes; culinary consulting services, namely, providing culinary advice related to food tastings; and recipe development, namely, consulting in the field of menu planning for others. A copy of the registration is attached hereto as **Exhibit A**.

11.    Plaintiff also owns a pending trademark application for QUINCE (Application Serial No. 98/107,546), filed on July 28, 2023, for restaurant services and bar services. A copy of the application is attached hereto as **Exhibit B**.

12.    Through 20 years of extensive use and widespread recognition, Plaintiff also owns common law trademark rights in the QUINCE Mark for all the products and services marketed under that mark, and the QUINCE Mark serves as an important symbol of Plaintiff's goodwill.

**B.    Defendant's Wrongful Acts**

13.    In 2020, seventeen years after Plaintiff first began using the mark QUINCE, Defendant began using the QUINCE mark to advertise and sell clothing, luggage, and

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

home goods such as chef's knives, cutlery, tablecloths, and napkins. Defendant also began using the QUINCE mark to market itself on the websites quince.com, onequince.com, facebook.com/Quince, instagram.com/onequince/, and twitter.com/onequince.

14.    Like Plaintiff, Defendant is based in San Francisco and markets itself as being based in San Francisco. Defendant's product offerings overlap with and are confusingly similar to Plaintiff's culinary and dining services and consulting services.

| Plaintiff's Restaurant and Services | Defendant's Website and Goods |
|---|---|
|  |  |
|  |  |

COMPLAINT

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

 

15.     Since Defendant began using the QUINCE mark in 2020, there have been numerous instances of actual consumer confusion between Defendant's services and Plaintiff's restaurant and dining services. At least one consumer left a negative review on Plaintiff's yelp.com page regarding poor customer service they received from Defendant. The Quince restaurant reservation line regularly receives calls and complaints from consumers regarding their orders with Defendant. In addition, Plaintiff has received shipments of home good products intended for Defendant, further establishing actual consumer confusion.

16.     Plaintiff and Defendant market their services through overlapping channels -- they both use websites, social media, and direct email to advertise their goods and services. Defendant's websites and social media pages all use the QUINCE Mark, and Defendant markets itself as based in San Francisco, where Plaintiff is located. Defendant also advertises its "sustainability" credentials on its website at quince.com/sustainability, creating further confusion with Quince's Michelin Green Star award for sustainability.

17.     Although Defendant has applied for two federal trademark registrations for the QUINCE Mark (Application Serial Nos. 90/678,169 and 90/678,247), Defendant owns no trademark registrations for QUINCE or any related mark. Defendant admitted in a

COMPLAINT

Response to Office Action that Defendant only began using the QUINCE Mark in 2020. *See* **Exhibit C**.

18.    On December 28, 2022, Plaintiff's counsel sent a letter to Defendant informing them that their use of the QUINCE Mark infringed Plaintiff's trademark rights. Thus, Defendant had notice of Plaintiff's ownership and superior rights in the QUINCE Mark since at least December 28, 2022.

19.    Defendant's continued use of the QUINCE Mark constitutes willful infringement of Plaintiff's federal and common law trademark rights.

20.    Defendant's use of the QUINCE Mark has caused and will continue to cause confusion, mistake, or deception, and creates an erroneous impression that Defendant's products have a connection, source, sponsorship, or affiliation with Plaintiff and its products and services.

21.    Defendant's continued use of the QUINCE Mark also deprives Plaintiff of the ability to control and maintain the high-quality products and services under the QUINCE Mark.

22.    Defendant's use of the QUINCE Mark has caused and will continue to cause consumers to attribute Defendant's poor products, poor service, and other shortcomings to Plaintiff, damaging Plaintiff's reputation and goodwill.

23.    Defendant's use of the QUINCE Mark also harms Plaintiff because consumers trying to contact Defendant continue to mistakenly contact Plaintiff, and items intended for Defendant continue to be sent to Plaintiff.

## FIRST CAUSE OF ACTION

### Federal Trademark Infringement under 15 U.S.C. § 1114

24.    Plaintiff realleges and incorporates by reference each of the above paragraphs as though fully set forth herein.

25.    Plaintiff owns a valid and protectable federal trademark registration for QUINCE, as shown in **Exhibit A**.

26.     Defendant's use of Plaintiff's QUINCE Mark is likely to cause confusion among consumers as to the source, sponsorship, affiliation, or approval of goods. Defendant's use of the QUINCE Mark falsely indicates to consumers that Defendant's products and services are connected with, sponsored by, affiliated with, or related to Plaintiff and its products and services.

27.     Defendant's conduct is without Plaintiff's permission or authority. Defendant had actual knowledge of Plaintiff's prior and senior rights in the QUINCE Mark. As a result, Defendant has committed its infringement with full knowledge of Plaintiff's rights in the QUINCE Mark, and has willfully, deliberately, and maliciously engaged in the described acts with intent to injure Plaintiff and deceive the public.

28.     Defendant's unauthorized use of the QUINCE Mark in connection with and to identify Defendant's products and services constitutes trademark infringement in violation of 15 U.S.C. § 1114.  Upon information and belief, Defendant has profited or will profit from this infringement.

29.     This is an exceptional case under 15 U.S.C. § 1117(a).

30.     Because of Defendant's infringement, Plaintiff has been irreparably harmed in its business and will continue to suffer irreparable harm unless Defendant is enjoined from using the QUINCE Mark.

31.     In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Defendant from using the QUINCE Mark, or any mark confusingly similar to Plaintiff's QUINCE Mark, for any purpose, and to recover from Defendant all damages, including attorneys' fees, that Plaintiff has sustained and will sustain as a result thereof, in an amount not yet known, but which circumstances warrant trebling pursuant to 15 U.S.C. § 1117, as well as the costs of this action.

## SECOND CAUSE OF ACTION

### Federal False Designation of Origin under 15 U.S.C. § 1125(a)

32.     Plaintiff realleges and incorporates by reference each of the above paragraphs as though fully set forth herein.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

COMPLAINT

33.     As described above, Plaintiff has used the QUINCE Mark in connection with its restaurant and related goods and services since 2003, and owns common law rights in that mark. Plaintiff's use of the QUINCE Mark predates Defendant's use of the mark.

34.     Defendant's unauthorized use of Plaintiff's QUINCE Mark causes a false association that is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiff, and/or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activity by Plaintiff.

35.     Defendant's conduct is without Plaintiff's permission or authority.  As described above, Defendant had actual knowledge of Plaintiff's prior and senior rights in the QUINCE Mark. As a result, Defendant has willfully, deliberately, and maliciously engaged in the described acts with an intent to injure Plaintiff and to deceive the public.

36.     Defendant's unauthorized use of the QUINCE Mark in connection with and to identify Defendant's goods and services constitutes false designation of origin and unfair competition by false association in violation of 15 U.S.C. § 1125(a).  Upon information and belief, Defendant has profited or will profit from this infringement.

37.     This is an exceptional case under 15 U.S.C. § 1117(a).

38.     Because of Defendant's infringement, Plaintiff has been irreparably harmed in its business and will continue to suffer irreparable harm unless Defendant is enjoined from infringing the QUINCE Mark.

39.     In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Defendant from using the QUINCE Mark, or any mark confusingly similar to Plaintiff's QUINCE Mark, for any purpose, and to recover from Defendant all damages, including attorneys' fees, that Plaintiff has sustained and will sustain as a result thereof, in an amount not yet known, but which circumstances warrant trebling pursuant to 15 U.S.C. § 1117, as well as the costs of this action.

## THIRD CAUSE OF ACTION

### Common Law Trademark Infringement

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

40.     Plaintiff realleges and incorporates by reference each of the above paragraphs as though fully set forth herein.

41.     Through 20 years of extensive use and widespread recognition, Plaintiff owns common law trademark rights in the QUINCE Mark.

42.     Defendant's use of Plaintiff's QUINCE Mark is likely to cause confusion among consumers as to the source, sponsorship, affiliation, or approval of goods. Defendant's use of the QUINCE Mark falsely indicates to consumers that Defendant's products and services are in some manner connected with, sponsored by, affiliated with, or related to Plaintiff and its products and services.

43.     Defendant's conduct is without Plaintiff's permission or authority. Defendant's unauthorized use of the QUINCE Mark in connection with and to identify Defendant's products and services constitutes common law trademark infringement.   Upon information and belief, Defendant has profited or will profit from this infringement.

44.     Because of Defendant's infringement, Plaintiff has been irreparably harmed in its business and will continue to suffer irreparable harm unless Defendant is enjoined from infringing the QUINCE Mark.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests this Court grant:

1.      Judgment against Defendant on all causes of action alleged herein;

2.      An order awarding Plaintiff:

      a. Defendant's profits due to the wrongful actions complained of herein;

      b. Any damages sustained by Plaintiff due to the wrongful acts complained of herein;

      c. Treble damages under 15 U.S.C. § 1117(b);

      d. Punitive and exemplary in an amount sufficient to deter and punish Defendant for its willful and wrongful acts;

      e. Its costs incurred in this action;

      f. Its reasonable attorneys' fees under 15 U.S.C. § 1117(a);

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

g.  Pre-judgment and post-judgment interest;

3.     An order, preliminarily and permanently enjoining Defendant, its agents, affiliates, subsidiaries, parents, officers, directors, employees, and assigns, and all persons in active concert or participation with them, from

a.  directly or indirectly using the QUINCE Mark, or any colorable imitation thereof or any mark confusingly similar thereto;

b.  using or registering any trademark, service mark, trade or business name, domain name, social media user name or handle, keyword, hashtag, vanity phone number, or attention-getting symbol that consists of or contains the QUINCE Mark, or any colorable imitation thereof or any mark confusingly similar thereto; and

c.  registering or using as a domain name any obvious variation or misspelling of the QUINCE Mark;

4.     An order pursuant to 15 U.S.C. § 1118, that all products and materials which infringe the QUINCE Mark be delivered up to Plaintiff for destruction;

5.     An order that Defendant be required to transfer ownership of any websites and social media accounts which infringe the QUINCE Mark to Plaintiff;

6.     An order pursuant to 15 U.S.C. § 1119:

a.  Cancelling U.S. Trademark Application Serial Nos. 90/678,169 and 90/678,247; and

b.  Enjoining the Director of the USPTO from issuing to Defendant any trademark registrations for the QUINCE Mark or any colorable imitation thereof or any mark confusingly similar thereto;

7.     Such other and further relief at law or in equity, to which the Court deems just and proper.

Dated:

COMPLAINT

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

DATED:  November 21, 2023          VENABLE, LLP

By:  */s/ Sarah S. Brooks*
Sarah S. Brooks

*Attorneys for Plaintiff Quince & Co LLC*

COMPLAINT

# EXHIBIT A

# United States of America

## United States Patent and Trademark Office

# Quince

**Reg. No. 5,730,261**

**Registered Apr. 16, 2019**

**Int. Cl.: 41, 43**

**Service Mark**

**Supplemental Register**

Quince Hospitality, LLC  (MINNESOTA LIMITED LIABILITY COMPANY)
600 Ridgewood, Unit 1
Minneapolis, MINNESOTA 55403

CLASS 41: Providing dining and culinary entertainment events in the nature of food tastings;
Culinary entertainment activities, namely, providing food tastings and experiential events

FIRST USE 4-1-2016; IN COMMERCE 4-1-2016

CLASS 43: Catering services; Event food preparation services; Custom meal creation
services, namely, food preparation services, consulting in the field of menu planning for
others and advice concerning cooking recipes; Culinary consulting services, namely,
providing culinary advice related to food tastings; Recipe development, namely, consulting in
the field of menu planning for others

FIRST USE 4-1-2016; IN COMMERCE 4-1-2016

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY
PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 88-145,746, FILED P.R. 10-07-2018; AM. S.R. 02-13-2019

Director of the United States
Patent and Trademark Office

> **REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**
>
> **WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten  Years\***
**What and When to File:**

- ***First Filing Deadline:***  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- ***Second Filing Deadline:***  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and  an  Application for  Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date).  The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  See 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j.  For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** h ttp://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic  Application System (TEAS) Correspondence  Address and Change of Owner  Address Forms available at** http://www.uspto.gov.

# EXHIBIT B

PTO- 1478
Approved for use through 10/31/2024. OMB 0651-0009
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

# Trademark/Service Mark Application, Principal Register

**Serial Number: 98107546**
**Filing Date: 07/28/2023**

### The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 98107546 |
| **MARK INFORMATION** | |
| *****MARK** | QUINCE |
| **STANDARD CHARACTERS** | YES |
| **USPTO-GENERATED IMAGE** | YES |
| **LITERAL ELEMENT** | QUINCE |
| **MARK STATEMENT** | The mark consists of standard characters, without claim to any particular font style, size, or color. |
| **REGISTER** | Principal |
| **APPLICANT INFORMATION** | |
| *****OWNER OF MARK** | Quince & Co. LLC |
| *****MAILING ADDRESS** | 470 Pacific Avenue |
| *****CITY** | San Francisco |
| *****STATE**<br>(Required for U.S. applicants) | California |
| *****COUNTRY/REGION/JURISDICTION/U.S. TERRITORY** | United States |
| *****ZIP/POSTAL CODE**<br>(Required for U.S. and certain international addresses) | 94133 |
| *****EMAIL ADDRESS** | XXXX |
| **LEGAL ENTITY INFORMATION** | |
| **TYPE** | limited liability company |
| **STATE/COUNTRY/REGION/JURISDICTION/U.S. TERRITORY WHERE LEGALLY ORGANIZED** | California |
| **GOODS AND/OR SERVICES AND BASIS INFORMATION** | |
| **INTERNATIONAL CLASS** | 043 |
| *****IDENTIFICATION** | Restaurant services; bar services |
| **FILING BASIS** | SECTION 1(b) |
| **ADDITIONAL STATEMENTS SECTION** | |
| **ACTIVE PRIOR REGISTRATION(S)** | The applicant claims ownership of active prior U.S. Registration Number(s) 5730261. |
| **ATTORNEY INFORMATION** | |
| **NAME** | Sarah S. Brooks |

| ATTORNEY DOCKET NUMBER | 145135571845 |
|---|---|
| ATTORNEY BAR MEMBERSHIP NUMBER | XXX |
| YEAR OF ADMISSION | XXXX |
| U.S. STATE/ COMMONWEALTH/ TERRITORY | XX |
| FIRM NAME | Venable LLP |
| STREET | 2049 Century Park East, Suite 2300 |
| CITY | Los Angeles |
| STATE | California |
| COUNTRY/REGION/JURISDICTION/U.S. TERRITORY | United States |
| ZIP/POSTAL CODE | 90067 |
| PHONE | 310-229-9900 |
| FAX | 310-229-9901 |
| EMAIL ADDRESS | trademarkdocketing@venable.com |
| OTHER APPOINTED ATTORNEY | Sharoni S. Finkelstein and all other attorneys of Venable LLP |
| **CORRESPONDENCE INFORMATION** | |
| NAME | Sarah S. Brooks |
| PRIMARY EMAIL ADDRESS FOR CORRESPONDENCE | trademarkdocketing@venable.com |
| SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES) | ssbrooks@venable.com; ssfinkelstein@venable.com; tli@venable.com |
| **FEE INFORMATION** | |
| APPLICATION FILING OPTION | TEAS Standard |
| NUMBER OF CLASSES | 1 |
| APPLICATION FOR REGISTRATION PER CLASS | 350 |
| *TOTAL FEES DUE | 350 |
| *TOTAL FEES PAID | 350 |
| **SIGNATURE INFORMATION** | |
| SIGNATURE | /Lindsay Tusk/ |
| SIGNATORY'S NAME | Lindsay Tusk |
| SIGNATORY'S POSITION | Owner |
| SIGNATORY'S PHONE NUMBER | 4152717551 |
| DATE SIGNED | 07/28/2023 |
| SIGNATURE METHOD | Sent to third party for signature |

PTO- 1478
Approved for use through 10/31/2024. OMB 0651-0009
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

## Trademark/Service Mark Application, Principal Register

**Serial Number: 98107546**
**Filing Date: 07/28/2023**

## To the Commissioner for Trademarks:

**MARK:** QUINCE (Standard Characters, see mark)
The literal element of the mark consists of QUINCE. The mark consists of standard characters, without claim to any particular font style, size, or color.
The applicant, Quince & Co. LLC, a limited liability company legally organized under the laws of California, having an address of
    470 Pacific Avenue
    San Francisco, California 94133
    United States
    XXXX

requests registration of the trademark/service mark identified above in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq.), as amended, for the following:

International Class 043:  Restaurant services; bar services
Intent to Use: The applicant has a bona fide intention, and is entitled, to use the mark in commerce on or in connection with the identified goods/services.

**Claim of Active Prior Registration(s)**
The applicant claims ownership of active prior U.S. Registration Number(s) 5730261.

The owner's/holder's proposed attorney information: Sarah S. Brooks. Other appointed attorneys are Sharoni S. Finkelstein and all other attorneys of Venable LLP. Sarah S. Brooks of Venable LLP, is a member of the XX bar, admitted to the bar in XXXX, bar membership no. XXX, and the attorney(s) is located at
    2049 Century Park East, Suite 2300
    Los Angeles, California 90067
    United States
    310-229-9900(phone)
    310-229-9901(fax)
    trademarkdocketing@venable.com
The docket/reference number is 145135571845.
Sarah S. Brooks submitted the following statement: The attorney of record is an active member in good standing of the bar of the highest court of a U.S. state, the District of Columbia, or any U.S. Commonwealth or territory.

The applicant's current Correspondence Information:
    Sarah S. Brooks
    PRIMARY EMAIL FOR CORRESPONDENCE: trademarkdocketing@venable.com
    SECONDARY EMAIL ADDRESS(ES) (COURTESY COPIES): ssbrooks@venable.com; ssfinkelstein@venable.com; tli@venable.com

**Requirement for Email and Electronic Filing:** I understand that a valid email address must be maintained by the applicant owner/holder and the applicant owner's/holder's attorney, if appointed, and that all official trademark correspondence must be submitted via the Trademark Electronic Application System (TEAS).
A fee payment in the amount of $350 has been submitted with the application, representing payment for 1 class(es).

## Declaration

☑ **Basis:**

**If the applicant is filing the application based on use in commerce under 15 U.S.C. § 1051(a):**

- The signatory believes that the applicant is the owner of the trademark/service mark sought to be registered;
- The mark is in use in commerce and was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application;
- The specimen(s) shows the mark as used on or in connection with the goods/services in the application and was used on or in connection with the goods/services in the application as of the application filing date; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

**And/Or**
**If the applicant is filing the application based on an intent to use the mark in commerce under 15 U.S.C. § 1051(b), § 1126(d), and/or § 1126(e):**

- The signatory believes that the applicant is entitled to use the mark in commerce;
- The applicant has a bona fide intention to use the mark in commerce and had a bona fide intention to use the mark in commerce as of the application filing date on or in connection with the goods/services in the application; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

- ☑ To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

- ☑ To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

- ☑ The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

**Declaration Signature**

Signature: /Lindsay Tusk/   Date: 07/28/2023
Signatory's Name: Lindsay Tusk
Signatory's Position: Owner
Signatory's Phone Number: 4152717551
Signature method: Sent to third party for signature
Payment Sale Number: 98107546
Payment Accounting Date: 07/28/2023

Serial Number: 98107546
Internet Transmission Date: Fri Jul 28 19:51:57 ET 2023
TEAS Stamp: USPTO/BAS-XX.XX.XXX.XXX-2023072819515851
0029-98107546-8605d851366d332edc6221e10c
5a91db8d4644bebd6fa9232293a8edab777eb715
d-CC-51579341-20230727142827562081

# QUINCE

# EXHIBIT C

Bruce LaBrie
Resolution Legal Group
Email Bruce@resolutionlegal.com

September 30, 2023

**Via TEAS**

Marynelle Wilson
Examining Attorney
LO113--Law Office 121
U.S. Patent & Trademark Office

### In re U.S. Application No. 90678169-QUINCE (CLASS 035)

The Examining Attorney has issued an office action dated March 30, 2023 (the "Office Action"). Pursuant to the Office Action, registration of the Applicant's mark was refused based on a Section 2(d) Likelihood of Confusion. The Applicant respectfully traverses the refusal.

**Section 2(d) Refusal--Likelihood of Confusion**

The Office Action refused the Applicant's word mark, QUINCE, for use with the following goods description:

Class 35: On-line retail store services featuring housewares, namely, bed sheets, pillow covers, shams, comforters, duvet covers, blankets, throws, quilts, bath linens, dining linens, runners.

The Applicant's mark was refused over a mark owned by My Quince Collection, LLC ("MQC"). The MQC mark is as follows:

MY QUINCE COLLECTION (word mark)

Class 35: On-line wholesale store services and retail store services featuring goods, namely, party accessories, paper goods, paper journals, home goods, clothing, jewelry, food and beverage.

The Applicant began using the QUINCE word mark in 2020 in connection with on-line retail services for certain housewares as provided in Applicant's goods description. MQC states its first use date for its word mark (MY QUINCE COLLECTION) was in 2019 in connection with on-line wholesale store services for goods such as party accessories, paper goods, paper journals, home goods, clothing, jewelry, food and beverage.

As the Examining Attorney has properly indicated, a likelihood of confusion is determined on a case-by-case basis by applying the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973) (called the "*du Pont* factors"). *In re*

*i.am.symbolic, llc*, 866 F.3d 1315,1322, 123 USPQ2d 1744, 1747 (Fed. Cir. 2017). Only those factors that are "relevant and of record" need be considered. *M2 Software, Inc. v. M2 Commc'ns, Inc., 450 F.3d 1378, 1382,* 78 USPQ2d 1944, 1947 (Fed. Cir. 2006) (citing *Shen Mfg. Co. v. Ritz Hotel Ltd., 393 F.3d 1238, 1241, 73 USPQ2d 1350, 1353 (Fed. Cir. 2004)); see In re Inn at St. John's, LLC,* 126 USPQ2d 1742, 1744 (TTAB 2018). However, the Applicant respectfully asserts that application of the *du Pont* factors shows that there is no likelihood of confusion and the Applicant's mark should be allowed registration.

The Office Action applied two of the *du Pont* factors, namely similarity of the marks and relatedness of the services.

<u>Similarity of Marks</u>

The Applicant seeks to register the mark QUINCE for on-line retail services in class 035. The mark cited in the Office Action and its services description cited by the Examining Attorney are:

MY QUINCE COLLECTION (word mark) for "On-line wholesale store services and retail store services featuring goods, namely, party accessories, paper goods, paper journals, home goods, clothing, jewelry, food and beverage" in Class 35.

In evaluating the likelihood of confusion, the Office Action refers to the *du Pont* factors for similarities in appearance, sound, connotation and commercial impression. (See Office Action, pp. 2-3). The marks share the common term "quince" in this case. However, the Applicant respectfully submits that this fact is not to be given the weight as proposed in the Office Action because the occurrence of the term in the cited registration is easily distinguishable from the Applicant's mark, which does not look like the registered mark, does not sound like the registered mark, does not connote or mean MY QUINCE COLLECTION, or give the same commercial impression as the registered mark. Also, the additional terms in the Registrant's word mark take on great importance and differentiate the goods and services from one another.

The Office Action relies on the assertion that the Applicant's mark is entirely encompassed in the Registrant's mark. However, the fundamental rule in this situation is that marks must be considered in their entireties. See TMEP§1207.01(c)(ii); *Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.*, 797 F.3d 1363, 1371, 116 USPQ2d 1129, 1134 (Fed. Cir. 2015); *In re Shell Oil Co.*, 992 F.2d 1204, 1206, 26 USPQ2d 1687, 1688 (Fed. Cir. 1993); *Massey Junior Coll., Inc. v. Fashion Inst. of Tech.*, 492 F.2d 1399, 1402, 181 USPQ 272, 273-74 (C.C.P.A. 1974). The Applicant respectfully disagrees that the Applicant's word mark creates a similar commercial impression to that of the Registrant's word mark. Registrant's MY QUINCE COLLECTION word mark will appear different from any representation of the Applicant's mark, despite the font or style used by the Applicant. The Registrant's word mark also includes "MY" and "COLLECTION" in its representation, which are not included in the Applicant's mark. Contrary to the assertion of the Office Action, the marks at issue have more differences than similarities, which undermines the point that since "the marks are identical in part" there is a likelihood of confusion. (See Office Action p. 3). The marks differ in sight, sound and meaning.

The Office Action also relies on the point that "the additional term COLLECTION in the registered mark has been disclaimed" and therefore is less significant or less dominant when comparing marks. (See Office Action, p. 3). However, this point is significantly undermined in the following paragraph of the Office Action when it is noted that the word "quince" in the Registrant's mark is also disclaimed. Both cannot be true. "Collection" appears to be the most significant and dominant part of the Registrant's mark, which is highly relevant when considering the mark in its entirety for considering whether the marks are confusingly similar. Viewing the marks in their entireties requires consideration of the marks in general, and the Registrant's mark in particular, to appropriately determine that the marks give different commercial impressions. These differences suggest that the marks are not similar.

When referencing the MQC website, it is apparent that the Registrant's mark was established with influence from the event of quinceañera, the celebration of a girl's 15th birthday that marks her passage from girlhood to womanhood. The word "quince" is often used as a shortened form of quinceañera. This website includes an inspiring story for young girls and women and seeks to empower others. However, even without reference to the MQC website, the Registrant's mark clearly has a different connotation and commercial impression from that of the Applicant, which has no such implicit reference to a quinceañera or any other thing. The Applicant's mark is a fanciful representation unrelated to any aspect of the Applicant's or the Registrant's businesses.

<u>Relatedness of the Services</u>

To determine whether a likelihood of confusion exists between two marks, it is proper to compare the goods and/or services of the marks. The nature and scope of a party's goods or services must be determined on the basis of the goods or services recited in the application or registration. *See, e.g.*, *In re Detroit Athletic Co.*, 903 F3d 1297, 128 USPQ2d 1047, 1052 (Fed. Cir. 2018); *Stone Lion Capital Partners, L.P. v. Lion Capital LLP*, 746 F.3d 1317, 110 USPQ2d 1157, 1162 (Fed. Cir. 2014); *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1370, 101 USPQ2d 1713, 1722 (Fed. Cir. 2012); *Hewlett-Packard Co. v. Packard Press Inc.*, 281 F.3d 1261, 1267, 62 USPQ2d 1001, 1004 (Fed. Cir. 2002); *J & J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 1463, 18 USPQ2d 1889, 1892 (Fed. Cir. 1991); *Octocom Sys., Inc. v. Houston Computer Servs., Inc.*, 918 F.2d 937, 942, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990); *Canadian Imperial Bank of Commerce, N.A. v. Wells Fargo Bank*, 811 F.2d 1490, 1493, 1 USPQ2d 1813, 1815 (Fed. Cir. 1987); *Paula Payne Prods. Co. v. Johnson Publ'g Co.*, 473 F.2d 901, 902, 177 USPQ 76, 77 (C.C.P.A. 1973) ; *In re Giovanni Food Co.*, 97 USPQ2d 1990, 1991 (TTAB 2011) ; *In re Iolo Techs., LLC*, 95 USPQ2d 1498, 1500 (TTAB 2010).

The Office Action takes a conclusory approach to determine that the Applicant's goods are closely related to the Registrant's services. (See Office Action, p. 3-4). To support that conclusion, the Office Action cites *In re Detroit Athletic Co.*, 903 F.3d 1297, 1307, 128 USPQ2d 1047, 1051 (Fed. Cir. 2018) for the premise that the marks at issue are likely to cause confusion. Reliance on *In re Detroit Athletic Co.* is not consistent with facts in our case and is distinguishable.

*In re Detroit Athletic Co.* considered the likelihood of confusion between two nearly identical trademarks, DETROIT ATHLETIC CO. and DETROIT ATHLETIC CLUB. In that case, the applicant sought to register a mark for "[o]n-line retail consignment stores featuring sports team related clothing and apparel; [r]etail apparel stores; [r]etail shops featuring sports team related clothing and apparel; [r]etail sports team related clothing and apparel stores." *Id.* at 1301. The registrant's mark was for "[c]lothing, namely athletic uniforms, coats, golf shirts, gym suits, hats, jackets, sweat pants, sweat shirts, polo shirts, and T-shirts." *Id.* at 1302. The court discussed, in depth, the practical identity of the two marks. *Id.* at 1303-1306. In addition to these two nearly identical marks, the goods and services are nearly identical. Neither of these is the case with the instant marks being addressed herein. Not only is QUINCE different from MY QUINCE COLLECTION, the goods and services of the two parties are distinct.

The Office Action notes that "evidence shows that purchasers are accustomed to encountering the services of the applicant and registrant offered under the same mark." (See Office Action, p. 4). *In re Davey* is cited to claim Applicant's and Registrant's goods and/or services are considered related for likelihood of confusion purposes. (See Office Action, p. 4). *In re Davey* is also distinguishable from the current case at hand. *In re Davey* featured the Applicant for the mark DAVEY for "electric motors for machines; waterpumps with fluid flow or pressure control for domestic, industrial and commercial use; and parts and fittings therefor." In the *Davey* case two separate registrations were cited against the applicant: 1) DAVEY for "air compressors and parts therefor;" and 2) DAVEY QUIETFLO for "air compressors." Again, the marks in *Davey* are identical in one case and nearly identical in the other. The limited products of the *Davey* application and the cited registrations are also closely related, unlike the current case. The same logic does not apply and without a similar mark, a likelihood of confusion cannot stand.

As is often the case in an ex parte examination of trademarks, the Office Action expands the services of the Registrant to include all services of the type described in the registration. One of the many phrases included in the services description of the Registration is "home goods," which appears to be the basis for the claim that Applicant's "housewares in the nature of bedding" and Registrant's services are legally identical. (See Office Action, p. 4). Expansion of such a description is acceptable in many instances and the Office Action cites *Made in Nature, LLC v. Pharmavite LLC*, 2022 USPQ2d 557 and several other cases in support of a finding of a likelihood of confusion. The Applicant respectfully asserts that our case and *Made in Nature, LLC v. Pharmavite LLC* are distinguishable.

In the case of *Made in Nature*, the applicant sought to register the mark MADE IN NATURE for various foods and beverages, including snack bars containing dried fruits and fruit juice, which was opposed by the registrant of the mark NATURE MADE for dried fruits and vegetables, snack products, and fresh fruit. *Id.* As in the distinctions made above, the nearly precise similarity of the marks and goods of the parties caused the Board to uphold a finding of a likelihood of confusion. This is contrasted with our present case in which the marks are not similar and the goods/services similarities are tenuous. Without similar marks there can be no likelihood of confusion.

Pursuant to the foregoing and the attached evidence, the Applicant respectfully requests that the rejection be withdrawn and the application be passed to issuance.

Best regards,

/Bruce LaBrie/

Bruce LaBrie
1214 N. Hudson Avenue
Oklahoma City, OK 73103
405-235-6500